UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AZAZHUSEN KHATRI ESTATE,
*et al.*,

       Plaintiffs,

v.

DEARBORN PUBLIC SCHOOLS, *et al.*,

       Defendants.

_____/

Case No. 4:23-cv-12930
District Judge F. Kay Behm
Magistrate Judge Anthony P. Patti

### REPORT AND RECOMMENDATION TO DENY WITHOUT PREJUDICE DEFENDANTS' MOTION TO DISMISS (ECF No. 16); ALLOW UNREPRESENTED PARTIES 30 DAYS TO FIND COUNSEL; AND, ALLOW 60 DAYS TO FILE A THIRD AMENDED COMPLAINT

**I.   RECOMMENDATION**: the Court should (1) **DENY WITHOUT PREJUDICE** Defendants' motion to dismiss (ECF No. 16); (2) allow 30 days for the unrepresented Plaintiffs to obtain counsel; and, (3) allow 60 days for any Plaintiffs still in the lawsuit to file a third amended complaint.

**II.   REPORT:**

   **A. Background**

Plaintiffs initiated this action against various defendants on November 16, 2023 (ECF No. 1), and then filed an amended complaint on December 7, 2023 (ECF No. 7.) The initial pleadings were stricken because Plaintiffs included the full names of minor children in the pleadings and attached documents. (ECF No

10.) Thereafter, Plaintiffs filed a second amended complaint[1] against Defendants Dearborn Public School, Dearborn Public School Board of Education, Yazmin Gerardo, Scott Hummel, Glenn Maleyko, Ibrahim Mashhour, and Zainah Tiba. (ECF No. 11.) Plaintiffs were listed as "Azazhusen Khatri, Estate Co-Personal representatives Azazhusen Khatri and Ghazala Khatri, individually; and Azazhusen Khatri as biological Father and General Guardian of Anne Doe, a Minor." (ECF No. 11.) All other parties mentioned in previous pleadings were dropped from this complaint, which is the operative pleading. The operative pleading is brought *pro se* by Azazhusen Khatri, and signed only by him, purportedly on behalf of himself and all other Plaintiffs. (ECF No. 11, PageID.180.)

The second amended complaint alleges that "Defendants failed to take immediate, and appropriate steps to investigate Bullying, Sex-based Harassment, Intimidation, Physical Assault, Retaliation, and Threats to be Shot in the head multiple times against AZAZHUSAN KHATRI, Estates Minor Daughter ("Anne") [and] that the Defendants failed to take prompt and effective steps to end the all [sic] of these heinous, atrocious, and nefarious incidents once on notice the misconduct had become sufficiently severe to deny Plaintiff access to Defendant

---

[1] This pleading is docketed as "Amended Complaint," and is entitled "Corrected Amendement [sic] #2 Complaint," but for clarity the Court will refer to it as the second amended complaint.

2

Dearborn Public School District's (DPS) educational program and activities." (ECF No. 11, PageID.148.)

Plaintiffs allege that the minor "Anne" (a pseudonym) entered Lindbergh Elementary School in 2017 as a kindergarten student and that from first grade through fourth grade she was bullied by the same five students. (ECF No. 11, PageID.154.) The details of the alleged bullying in the earlier grades are not provided, but Plaintiffs claim that since the beginning of fourth grade the bullies played the "cootie or the inappropriate touch game" regarding Anne, tried to cut her hair, and when sitting behind her, pushed against her back. (ECF No. 11, PageID.155.) Plaintiffs also alleged that in September 2021, some of the bullies rubbed sticky notes on their male genitalia, crunched them into balls and threw them at Anne, with them landing on her desk. (*Id.*) Defendants Tiba and Gerardo were reportedly aware of the sticky note incident and told Anne to wash her hands and report it to a social worker. (*Id.*) A few days later, two of the bullies folded their hands to mimic a gun and told Anne "I feel like putting a bullet in your head." (*Id.*, PageID.156.) When Anne reported the incident, Defendant Gerardo again told her to tell a social worker. (*Id.*) Plaintiffs allege that none of these incidents were reported to Anne's parents, or to Dearborn Public Schools ("DPS") Resource Officer, Dearborn Public Administration, or Michigan Child Protection Services.

(*Id.*)  Plaintiff's complaint asserts that Anne was frightened for her life and afraid to go to school.  (*Id.*)

On September 22, 2021, Plaintiff GK ("Anne's" mother) met with Defendant Gerardo and asked if she was aware that Anne was being bullied.  (*Id.*, PageID.156-57.)  Gerardo confirmed that both she and the social worker were aware.  The next day, when GK arrived at school around 11:00 am, she found Anne in the office, allegedly trembling in fear. (*Id.*, PageID.157.)  Anne told her mother that a group of the bullies had pinned her against the wall and were threatening, screaming, and assaulting her and that one of them had again made their hand into a gun and stated he "would like to shoot her in [her] head in such a way that bloodstream would roll down her eyeball."  (*Id.*)  A DPS teacher found her and brought her into the office, stating to Anne's mother "I am sorry, this should not have happened."  (*Id.*)  Defendant Tiba met with Anne and a classmate about the incident for less than two minutes and then told them to go to lunch.  (*Id.*)  Plaintiff GK called 911 to report a "threat to shoot in the head," and Defendant Resource Officer Hanson was dispatched by the police department. (ECF No. 11, PageID.158.)  Defendant Hanson met only with Defendant Tiba, and not with Anne or her mother, and then left.  Plaintiff GK took Anne home, in fear for her safety.  (*Id.*, PageID.159.)  Anne was "so stressed that she started to have

panic attacks at night and was not able to sleep[,] causing an emotional breakdown." (*Id.*)

Plaintiffs claim that they informed Defendants that they moved their daughter to a different school but Defendants sent a truancy letter to them as "further intimidation and retaliation." (*Id.*)  Plaintiff GK had been the PTA President at Lindbergh elementary and Defendants purportedly "forcefully demanded" that she resign and also that she delete a personal email address she had created, presumably in relation to her position. (*Id.*)

Plaintiffs claim that they are of "Asian Indian Ethnicity" (ECF No. 11, PageID.149-50), and that "the common Denominator among most of the defendants, Bullies, Perpetrators, Assaulters, and unequivocally Threat agents listed here are their Arab heritage and ethnic background.  The Defendants (Tiba, Mashhour), as well as all five Threat agents [i.e., the alleged bullies] are of Arab heritage and descent." (*Id.* at PageID.160.)

The operative pleading alleges ten counts against Defendants:

- Count I: Failure to Comply with U.S. Constitution 14th Amendment, and 42 U.S.C. §§1981, 1983, and Title IX, 20 U.S.C. § 1681 et seq., and Civil Rights 18 U.S.C. §§ 242, 245, 1001.  (ECF No. 11, PageID.160-165)

- Count II:  Failure to Comply with Title IX, 20 U.S.C. § 1681 *et seq.* (ECF No. 11, PageID.165-166)

- Count III:  U.S. Department of Education; The Rehabilitation Act of 1973, Section 504, 34 CFR 104 and American with Disabilities Act of 1990 (ADA), Title II, 42 USC 12131-12134, 28 CFR 35; The Persons with

    Disabilities Civil Rights Act of Michigan MCL 37.1101 *et seq*. (ECF No. 11, PageID.166-167)

- Count IV: Retaliation and Conspiracy; 14th Amendment 42 U.S.C. § 1985 Violations; and Title IX Retaliation 20 U.S.C. § 1681 *et seq*. Violations; and Civil Rights 18 U.S.C. §§ 241, 245, 371, 372, 1001, 1752 Violations, and RICO Laws 18 U.S.C. §§ 1961-68, Retaliation and Violations (ECF No. 11, PageID.167-170)

- Count V: Deliberate Indifference to Sexual Harassment 20 U.S.C. §1681 *et seq*. (ECF No. 11, PageID.171-172)

- Count VI: *Monell* Liability for Failure to Comply with Title IX 42 U.S.C. § 1983 (against only the DPS Defendants) (ECF No. 11, PageID.172-173)

- Count VII: Elliot-Larsen Civil Rights Act of 453 of the 1976 and Michigan Revise[d] School Code "The Matt Epling Safe School Law", MCL 380.1310b (ECF No. 11, PageID.173-174)

- Count VIII: Negligence—MCL Act 170 of 1964, 691.1401; and Gross Negligence GTLA (v) and M.C.L. § 600.2945(d); 18 U.S.C. § 1001 (against all Defendants except Gerardo) (ECF No. 11, PageID.175-177)

- Count IX: Intentional Infliction of Emotional Distress (ECF No. 11, PageID.177-178)

- Count X: Injunctive relief brought by "Plaintiff" against "Defendants" for various injuries (ranging from post-traumatic stress disorder to night sweats and constant pain and suffering). From the use of singular "Plaintiff," as well as the context found within about "Anne," this count appears to be brought by Plaintiff Anne. (ECF No. 11, PageID.178-79)

6

Plaintiffs seek compensatory damages of 30 million dollars, and punitive/exemplary damages, and to criminally prosecute Defendants and the bullies. (*Id.* PageID.179.)[2]

**B. Standard**

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations" but must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the

---

[2] Plaintiffs are forewarned that criminal prosecution is not an available remedy in a civil case; should they avail themselves of the opportunity to amend, they should refrain from making such a request. For that remedy, they must talk to the police or a prosecutor.

strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd. P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013).

### C. Analysis

#### 1. Claims by Plaintiffs GK, Anne, and the Estate

The Federal Rules of Civil Procedure provide that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). Here, Plaintiff AK signed the operative pleading on behalf of himself, his wife GK, his minor child "Anne," and an undefined "estate"--the details of which are a bit murky. Defendants argue that all plaintiffs other than Plaintiff AK should be dismissed because Plaintiff AK, a non-attorney, cannot represent other individuals in court.

"In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." 28 U.S.C. § 1654. However, the express language of § 1654 states that parties may represent "*their own* cases;" it does not provide that parties may plead and conduct other parties' cases.

Plaintiffs cite to Federal Rule of Civil Procedure 17 to argue that "an Estate, Executor, Executrix, and a General Guardian can file as Pro Se." (ECF No. 19, PageID.306.) However, Rule 17(a)(1)(A) states only that "[a]n action must be

8

prosecuted in the name of the real party in interest," and provides that the listed classifications "may sue in their own names without joining the person for whose benefit the action is brought." Fed. R. Civ. P. 17(a)(1)(A). So, while parents may sue or defend in their own name on behalf of their minor child, or on behalf of an estate, they may not do so *pro se* but must engage the services of an attorney. *Cavanaugh ex rel. Cavanaugh v. Cardinal Loc. Sch. Dist.*, 409 F.3d 753, 755 (6th Cir. 2005), *abrogated on other grounds* by *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007). "Because, by definition, pro se means to appear on one's own behalf, a person may not appear *pro se* on another person's behalf in the other's cause of action." *Id.*

Indeed, courts have specifically held that "parents cannot appear pro se on behalf of their minor children because a minor's personal cause of action is her own and does not belong to her parent or representative." *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002). Likewise, a husband may not bring an action without counsel on behalf of his wife, unless, of course, the husband is a licensed attorney and admitted to the bar of this Court. *Nouri v. TCF Bank*, No. 10-12436, 2011 WL 836764, at *3 (E.D. Mich. Mar. 9, 2011) (Cox, J.) (dismissing all claims purportedly brought on behalf of the pro se plaintiff's wife). And, finally, "an administratrix or executrix of an estate may not proceed pro se when the estate has beneficiaries and creditors other than the litigant." *Id.* (quoting *Pridgen v.*

9

*Andresen*, 113 F.3d 391, 393 (2nd Cir. 1997)); *see also Zanecki v. Health All. Plan of Detroit*, 576 F. App'x 594, 595 (6th Cir. 2014) (noting that a non-lawyer may not represent an estate *pro se*).

Thus, while AK may represent himself, he cannot represent his wife, child, or the undefined "estate." Defendants ask that the claims in the operative pleading be dismissed with prejudice, not just because they were brought improperly by the *pro se* AK, but also because they are substantively without merit. The Court should decline the request to dismiss the case with prejudice at this juncture. "The rule against non-lawyer representation 'protects the rights of those before the court' by preventing an ill-equipped layperson from squandering the rights of the party he purports to represent." *Zanecki*, 576 F. App'x at 595 (quoting *Myers v. Loudoun Cnty. Pub. Sch.*, 418 F.3d 395, 400 (4th Cir. 2005)). Because the other plaintiffs in this action were never properly represented, the Court should not dismiss any of their potential claims with prejudice.

In cases where a layperson improperly attempts to represent another party *pro se*, "the usual course of action is to dismiss the case *without prejudice*." *Zanecki*, 576 F. App'x at 595 (emphasis added) (citing *Shepherd*, 313 F.3d at 971; *Georgakis v. Ill. State Univ.*, 722 F.3d 1075, 1077 (7th Cir. 2013); *Jones ex rel. Jones v. Corr. Med. Servs., Inc.*, 401 F.3d 950, 952 (8th Cir. 2005); *Nouri v. TCF Bank*, 2011 WL 836764, at *3 ("Where a person attempts to proceed pro se on

10

behalf of another, the appropriate remedy is dismissal."). However, "[i]n similar cases, rather than dismissing such an action outright, district courts have given *pro se* plaintiffs additional time in which to obtain counsel to represent minor children." *Harnden v. Croswell-Lexington Cmty. Sch.,* No. 2:15-CV-12738, 2016 WL 1317942, at *4 (E.D. Mich. Mar. 14, 2016) (Patti, M.J.), *report and recommendation adopted in part*, No. 15-CV-12738, 2016 WL 8115653 (E.D. Mich. Apr. 4, 2016) (Goldsmith, J.) (citing *Shepard*, 313 F.3d at 966; *see also Beard ex rel. Ford v. Hawkins*, No. 14–12464, 2015 WL 3915877, at *4 (E.D. Mich. June 25, 2015) (collecting cases in which the court gave *pro se* plaintiffs attempting to file on behalf of another individual additional time to obtain counsel)).

Given the relative infancy of this case, rather than dismiss the unrepresented Plaintiffs, the Court should give them 30 days to find counsel. If, after 30 days, no counsel has filed an appearance on behalf of Plaintiffs Anne, the Estate, or GK (and in the case of GK, if she has not alternatively filed a notice to proceed *pro se*), then they should be dismissed from this lawsuit without prejudice for lack of prosecution under Eastern District of Michigan Local Rule 41.2.

### 2. Claims by Plaintiff AK

Should the Court accept my recommendation that all claims brought by Plaintiffs GK, the Estate, and Anne should be dismissed without prejudice in the

11

absence of the steps outlined above, the only remaining claims would be those assert by Plaintiff AK. However, in drafting the operative pleading, Plaintiff AK, proceeding *pro se* on behalf of himself and improperly on behalf of the other plaintiffs, has not clearly articulated which counts are brought by which specific plaintiffs. The pleading often flips back and forth between referencing the singular "Plaintiff" and the plural "Plaintiffs" without specifying which plaintiffs' rights have been violated with respect to any given count or claim. Defendants argue that all claims should be dismissed with prejudice, but the organization of their brief lends further confusion to which of those claims relate to Plaintiff AK. Defendants argue that certain Defendants should be dismissed, certain claims should be dismissed, but then include one subheading which states "AK's and GK's claims should be dismissed." While Defendants cannot be blamed for an unsuccessful attempt to parse out Plaintiffs' lengthy and ambiguous pleading, it is clear that neither Defendants nor the Court can ascertain which claims are brought *solely* by AK.

Before examining the operative pleading to determine whether it states a claim upon which relief can be granted, the Court must first ascertain exactly *who* is bringing the alleged cause of action. Rights are personal to the litigant, and the Court simply cannot examine the complaint without knowing on whose behalf each Count is asserted, particularly when it appears that most claims have been

12

brought inappropriately by a non-attorney on behalf of others.  Plaintiff should therefore be directed to clean up his pleading by allowing him a chance to file another amended complaint, with specific instructions to clarify what specific right Plaintiff alleges is violated, and on whose behalf the claim is brought.  Given that I recommend giving the unrepresented parties thirty days to find counsel, any further delay necessitated by allowing Plaintiff AK a chance to clean up his pleadings will be minimal. In amending his pleading, Plaintiff AK (or any of the others) must avoid lumping together multiple statutes, claims and theories in each count, as it is extraordinarily difficult to discern what the claims are under any given count in the existent pleading, and pleading in this manner again risks dismissal for failure to state a claim.  Throwing "everything but the kitchen sink" into a complaint does not enhance it; rather, it tends to have the opposite effect.  The plaintiffs would be wise to consult and possibly retain licensed legal counsel (and not merely the Internet), or the *pro se* clinic (discussed below), before venturing back into the somewhat complicated (and very much rule-driven) land of federal court pleading.

Pleadings and motions are governed by Fed. Rules Civ. P. 7 to 16.  The form of a pleading is governed by Fed. R. Civ. P. 10.  In part, Rule 10 requires that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).  Moreover,

the general rules of pleading provide, "[a] pleading that states a claim for relief must contain:

    (1)    a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

    (2)    a short and plain statement of the claim showing that the pleader is entitled to relief; and

    (3)    a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a) ("Claim for Relief."). Pleadings are also subject to Fed. R. Civ. P. 11, and even *pro se* Plaintiffs must review and understand their obligations contained therein. All attorneys and all adults representing themselves must individually sign their pleadings. Fed. R. Civ. P. 11(a).

    The current operative pleading fails to meet these requirements. For example, it is critical that Plaintiff make clear on whose behalf he is bringing the pleaded claims, as only then will the Court be able to determine whether the specific aggrieved party has standing and whether the Court has subject matter jurisdiction over this lawsuit. Moreover, "[t]he goal of the complaint is to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bommarito v. Equifax Information Serv's*, 340 F.R.D. 566 (E.D. Mich. 2022) *(quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (further internal citations omitted). The pleadings in the present form fail to give

Defendants notice of which claims are asserted by which Plaintiffs, and therefore they are unable to assess the legal sufficiency of the second amended complaint. The Court fares no better.

The Court can only go so far in the exercise of liberally construing Plaintiff's *pro se* pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him . . . . [N]either may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., *adopting report and recommendation of* Binder, M.J.). Furthermore, the Court has "no obligation to act as counsel or paralegal to *pro se* litigants." *Pliler v. Ford*, 542 U.S. 225, 231 (2004). In the end, Plaintiff is "the master of his complaint," and thus, the Court looks to the pleadings to define his claims. *Roddy v. Grand Trunk W. R.R., Inc.*, 395 F.3d 318, 322 (6th Cir. 2005). <u>Plaintiff is hereby informed that there is a Federal *Pro Se* Legal Assistance Clinic operated in the Theodore Levin U.S. Courthouse by the University of Detroit Mercy Law School. To determine if</u>

15

he is eligible for assistance, Plaintiff may contact the Federal *Pro Se* Legal Assistance Clinic at (313) 234-2690 or at proseclinic@udmercy.edu.

## IV.   CONCLUSION

For the reasons stated above, I recommend that the Court (1) **DENY WITHOUT PREJUDICE** Defendants' motion to dismiss (ECF No. 16); (2) allow 30 days for the unrepresented Plaintiffs to obtain counsel (or, alternatively, in the case of Plaintiff GK only, to declare her intention to proceed *pro se* by signing and filing a notice to that effect); and, (3) allow 60 days for any Plaintiffs still in the lawsuit to file a third amended complaint.

Plaintiffs are specifically warned that a failure to abide by the Court's instructions found in this Report and Recommendation, and any further instructions provided by Judge Behm, may result in immediate dismissal of this action. Specifically:

(1) Plaintiff AK cannot represent any other party *pro se* in this action.

(2) If this recommendation is adopted by Judge Behm, Plaintiffs GK, Anne, and the estate may be allowed an additional time period to find counsel, or in the case of Plaintiff GK decide to proceed *pro se*, but they will be dismissed from this lawsuit if within the specified time period they do not file a notice of appearance or, in the case of Plaintiff GK, a notice of

16

intention to proceed *pro se*. Any such filings must comply with the Federal Rules of Civil Procedure and the case law identified above.

(3) If this recommendation is adopted by Judge Behm, Plaintiff AK (and any parties who have obtained counsel, or in the case of Plaintiff GK, either obtained counsel or declared an intention to represent herself) will be given a specified time to file a third amended complaint. The amended pleading must comply with the Federal Rules of Civil Procedure and the case law identified above, and clearly identify what claim is being brought by what party and which alleged right is alleged to have been violated. If Plaintiff AK—or any other Plaintiff who chooses to properly move forward—fails to abide by this dictate, the amended pleading may be tested by motion or by show cause order.

## V. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*. If the Court determines that any objections are without merit, it may rule without awaiting the response.

**IT IS SO ORDERED.**

Dated: July 31, 2024

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE