UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AZAZHUSEN KHATRI ESTATE,
*et al.*,

            Case No. 4:23-cv-12874
    Plaintiffs,     District Judge F. Kay Behm
            Magistrate Judge Anthony P. Patti

v.

DEARBORN PUBLIC SCHOOLS, *et al.*,

    Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT (ECF No. 27)

**I.**   **RECOMMENDATION**:  the Court should **GRANT** Defendants' motion to dismiss Plaintiffs' third amended complaint.  (ECF No. 27)

**II.**   **REPORT:**

 **A. Background**

  Before the Court is Defendants' second motion to dismiss, this time directed at Plaintiffs' third amended complaint.

  **1. Second Amended Complaint**

  Plaintiffs initiated this action against various defendants on November 13, 2023 (ECF No. 1), and then filed an amended complaint on November 28, 2023 (ECF No. 7.)  The initial pleadings were stricken because Plaintiffs included the full names of minor children in the pleadings and attached documents.  (ECF Nos.

4, 12.)  Thereafter, Plaintiffs filed a second amended complaint[1] against

Defendants Dearborn Public School, Dearborn Public School Board of Education,

Oussama Baydoun, Amal Alcodray, Ibrahim Mashhour, Glenn Maleyko, and

Courtney Pletzke.  (ECF No. 13.)  Plaintiffs were listed as "Azazhusen Khatri

['AK'], Estate Co-Personal representatives Azazhusen Khatri and Ghazala Khatri

['GK'], individually; and Azazhusen Khatri as biological Father and General

Guardian of Alma Doe, a Minor."  (ECF No. 13.) All other parties mentioned in

previous pleadings were dropped from this complaint, which became the operative

pleading.  This pleading was brought *pro se* by Azazhusen Khatri, and signed only

by him, purportedly on behalf of himself and all other Plaintiffs.  (ECF No. 13,

PageID.181.)

The second amended complaint alleged that Plaintiff Alma (a pseudonym)

"has been verbally and physically bullied for over two years at Dearborn Public

Schools STEM Middle school, cyberbullied in the school, a heinous crime of

Sexual Assault Threat, and continuous bullying and systemic retaliation that

increased exponentially over time."  (ECF No. 13, PageID.149.)  Plaintiffs

specifically alleged that "[o]n September 25, 2023, the same bully took his

bullying tactics to a horrifying level and sexually assaulted Alma in the class room

---

[1] This pleading is docketed as "Second Amended Complaint," and is titled
"Corrected Amendement [sic] #2 Complaint," but for clarity the Court will refer to
it as the second amended complaint.

[sic] during [the] presence of all classmates while class was in session." (*Id.*) According to Plaintiffs, they requested that Defendants investigate the bullying and "Defendants intimidated, conspired, retaliated, verbally assaulted and threatened" Plaintiffs and banned them from the school complex. (*Id.*)

Plaintiffs' second amended complaint asserted that Alma has severe allergies and health conditions requiring her mother to bring allergen free food to the school every day, but that Defendants have failed to establish a "504 plan" for her. (ECF No. 13, PageID.153-54.) Alma's health conditions have resulted in her being only 51 pounds and 4'3" at the start of 8th grade in August 2023. (ECF No. 13, PageID.151.) One of the alleged bullies has been calling Alma "Tiny", and other "profane, and derogatory names" and has been "pushing, targeting, and shoving her especially in the 6th grade Physical Education Class since September 2021." (ECF No. 13, PageID.154.) Plaintiffs also alleged cyberbullying "by hundreds of students" which occurred on one day, and that Defendants demanded students delete evidence of the cyberbullying.[2] (ECF No. 13, PageID.155.) Finally, Plaintiffs alleged that on September 25, 2023, one of the bullies made a series of inappropriate and alarming comments either to Alma or in proximity of her: (1) in

---

[2] Plaintiffs attached a police report to their complaint in which it is noted that according to Defendant Baydoun, the "cyber-attack" was the message "I love you" sent to 3000 students in a school group chat which included Plaintiff Alma. (ECF No. 13, PageID.210.)

the second class, he addressed Plaintiff, stating "You are worthless b*tches;" (2) in the same class he stated to a classmate, that "he would like to go to a park and lure someone's child into his car and kidnap him;" and (3) in the third class he "loudly and clearly stated 'Alma, we'll rape you.'"[3]  (ECF No. 13, PageID.156.)

Plaintiffs alleged that Defendants did not appropriately handle this situation, and that two days later Defendant Baydoud "bullied, intimidated, publicly humiliated, publicly threatened, and publicly assaulted" the Plaintiffs AK and GK (Alma's parents).  (ECF No. 13, PageID.157-58.)  According to the second amended complaint, when Plaintiffs were dropping off Alma in the morning at school, Defendant Baydoun "angrily made a violent hand gesture of GUN with his right hand pointing directly within inches of Plaintiff (AK)'s face repeatedly like a pistol whipping and in the eyes of Plaintiff (GK)."  (ECF No. 13, PageID.158.)  Defendant Baydoun then allegedly threatened to have GK and AK arrested if they came to pick up their daughter or to meet with the principal again.  (*Id.*)  Plaintiffs AK and GK were sent a document that "prohibited and banned" them from the DPS Dearborn Heights Complex, including to drop off or pick up their daughter.[4]

---

[3] According to the police report attached to Plaintiffs' complaint, a school investigation concluded "after interviewing many students that the actual comments amongst a group of boys was 'You are so weak [Alma] can rape you.'" (ECF No. 13, PageID.210.)

[4] As Defendants point out, Plaintiffs' allegations are refuted by their own exhibit, attached to their second amended complaint as Exhibit 2.  (ECF No. 13,

(*Id.*)  Plaintiffs sent a formal complaint to Defendant DPS Board of Education and requested help and an independent investigation.  (*Id.*)  Plaintiffs also sent a formal complaint to the Dearborn Heights Police Department.  (ECF No. 13, PageID.159.) According to Plaintiffs, Alma has lost weight since this incident, and now has to be dropped off and picked up "across the street on a very busy street every single day" and must "walk over 50 yards each way every day with a bag pack [sic], lunch bag, and musical instrument." (*Id.*)   Plaintiffs stated that Alma's health has deteriorated based on the lack of fresh allergen-free lunches, being forced to walk 50 yards, and her cold-related Asthma which is triggered when the temperature drops to freezing conditions.  (*Id.*)   Plaintiffs further complained that the specified bully "continues to use profane words like "F*ck," "Motherf*cker," "Sh*t," "Pedophile," "B*tches," "Penis," other vulgar phrases in front/around girls" at school.  (*Id.*)  Plaintiffs claimed that Defendants conspired to remove Plaintiff GK from her STEM PTA treasurer position by holding an alleged "illegal election." (ECF No. 13, PageID.170.)

---

PageID.193.)  This exhibit, which is the referenced email from Defendants, states that Plaintiffs GK and AK are "not permitted to go to your child's classroom," but "must report to the main office upon entering the building." (*Id.*)  It further states that they are prohibited from entering STEM Middle School and the Dearborn Heights Campus "without first contacting the main office and speaking directly to Mr. Baydoun or Ms. Alcodray." (*Id.*)  The letter states that if urgent matters arise, Defendants would call Alma to the main office and Plaintiffs AK and GK would meet with her there, but that they could not go directly to Alma's classroom. (*Id.*)

Plaintiffs asserted that they are of "Asian Indian" descent (ECF No. 13, PageID.171-172) and that "Arab heritage or descent ethnicity is a common denominator among Defendants (Ibrahim Mashhour, Amal Alcodray, and Oussam Baydoun), Bullies and Perpetrators (SSI and SS2), and directly involved conspirators/actors Haifa Baydoun and Nasrin Hider." (*Id.* at PageID.160.)

The second amended complaint alleged ten counts against Defendants:

- Count I: Failure to Comply with U.S. Constitution 14th Amendment, and 42 U.S.C. §§1981, 1983; Title IX, 20 U.S.C. § 1681 et seq.; Civil Rights 18 U.S.C. §§ 242, 245, 1001, 1752; and RICO Laws 18 U.S.C. §§ 1961-68. (ECF No. 13, PageID.160-165)

- Count II:  Failure to Comply with Title IX, 20 U.S.C. § 1681 *et seq.* (ECF No. 13, PageID.165-166)

- Count III:  U.S. Department of Education; The Rehabilitation Act of 1973, Section 504, 34 CFR 104 and American with Disabilities Act of 1990 (ADA), Title II, 42 USC 12131-12134, 28 CFR 35; The Persons with Disabilities Civil Rights Act of Michigan MCL 370.1101 *et seq*. (ECF No. 13, PageID.166-167)

- Count IV: Retaliation and Conspiracy; 14th Amendment 42 U.S.C. § 1985 Violations; and Title IX Retaliation 20 U.S.C. § 1681 *et seq*. Violations; and Civil Rights 18 U.S.C. §§ 241, 245, 371, 372, 1001, 1752 Violations, and RICO Laws 18 U.S.C. §§ 1961-68, Retaliation and Violations (ECF No. 13, PageID.167-173)

- Count V:  Deliberate Indifference to Sexual Harassment 20 U.S.C. §1681 *et seq.* (ECF No. 13, PageID.173-174)

- Count VI:  *Monell* Liability for Failure to Comply with Title IX 42 U.S.C. § 1983  (ECF No. 13, PageID.175)

- Count VII:  Elliot-Larsen Civil Rights Act of 453 of the 1976 and Michigan Revise[d] School Code "The Matt Epling Safe School Law", MCL 380.1310b (ECF No. 13, PageID.176-177)

- Count VIII:  Negligence—MCL Act 170 of 1964, 691.1401; and Gross Negligence GTLA (v) and M.C.L. § 600.2945(d) (ECF No. 13, PageID.177-178)

- Count IX:  Intentional Infliction of Emotional Distress (ECF No. 13, PageID.178-179)

- Count X:  Injunctive relief  (ECF No. 13, PageID.179-80)

Plaintiffs sought compensatory damages of 30 million dollars, and punitive/exemplary damages, and to criminally prosecute Defendants and the bullies.  (*Id.* PageID.179.)

### 2.  Prior Motion to Dismiss

On February 12, 2024, Defendants filed a motion to dismiss, arguing that various deficiencies in Plaintiffs' second amended complaint mandated dismissal. (ECF No. 18.)  Judge F. Kay Behm referred the matter to me "for all pretrial proceedings, including a hearing and determination of all non−dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A) and/or a report and recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B)."  (ECF No. 19, pageID.327.)  The matter was fully briefed, and I issued a report and recommendation ("R&R") to deny the motion to dismiss without prejudice. (ECF No. 24.)  While I agreed that Plaintiffs' pleading could not withstand a motion to dismiss, given Plaintiffs' *pro se* status, I allowed the unrepresented parties 30 days

7

to find counsel and 60 days to file a third amended complaint.  (ECF No. 24.)  No objections were filed, and Judge Behm adopted my recommendation.  (ECF No. 25.)

In my R&R, I made the following relevant findings, all of which have now been adopted by Judge Behm.

### a.  Claims brought by Plaintiffs GK, Alma, and the Estate

Citing the Federal Rules of Civil Procedure, binding case law, and statutory authority, the Court first found that Plaintiff AK could represent himself *pro se*, but as a non-lawyer, he could not represent his wife, his minor child, or the estates *pro se*.  (ECF No. 24, PageID.425-429.)  The Court also noted that in cases where a layperson improperly attempts to represent another party *pro se*, "the usual course of action is to dismiss the case *without prejudice*." *Zanecki v. Health All. Plan of Detroit*, 576 F. App'x 594, 595 (6th Cir. 2014) (emphasis added).  (ECF No. 24, PageId.428 (citations omitted).  However, I agreed with the reasoning in similar cases where, "rather than dismissing such an action outright, district courts have given *pro se* plaintiffs additional time in which to obtain counsel to represent minor children." *Harnden v. Croswell-Lexington Cmty. Sch.,* No. 2:15-CV-12738, 2016 WL 1317942, at *4 (E.D. Mich. Mar. 14, 2016) (Patti, M.J.), *report and recommendation adopted in part*, No. 15-CV-12738, 2016 WL 8115653 (E.D. Mich. Apr. 4, 2016) (Goldsmith, J.) (citing *Shepard*, 313 F.3d at 966); *see also*

*Beard ex rel. Ford v. Hawkins*, No. 14–12464, 2015 WL 3915877, at *4 (E.D.

Mich. June 25, 2015) (collecting cases in which the court gave *pro se* plaintiffs

attempting to file on behalf of another individual additional time to obtain

counsel)) (ECF No. 24, PageID.428.).  I thus suggested Plaintiffs be given 30 days

to find counsel (or in the case of GK to find counsel or file a notice to proceed *pro*

*se*).  I recommended that, should Plaintiffs fail to do so, then they should be

dismissed from this lawsuit without prejudice for lack of prosecution.  **(**ECF No.

24, PageID.429.)

### b.  Claims brought by Plaintiff AK

In my R&R, I further found that the remaining claims, consisting of those

brought by Plaintiff AK, were also deficient in the operative pleading.  (ECF No.

24, PgeID.429.)  I noted that the pleading as drafted did not specify which counts

were brought by which specific plaintiffs.  "The pleading often flips back and forth

between referencing the singular 'Plaintiff' and the plural 'Plaintiffs' without

specifying which plaintiffs' rights have been violated with respect to any given

count or claim."  (ECF No. 24, PageID.429.)  Given the lack of specificity, neither

Defendants nor the Court could ascertain which claims are brought *solely* by AK in

order to examine whether those individual claims could survive a motion to

dismiss.  I stated:

> Before examining the operative pleading to determine whether it states a
> claim upon which relief can be granted, the Court must first ascertain exactly

> *who* is bringing the alleged cause of action.  Rights are personal to the litigant, and the Court simply cannot examine the complaint without knowing on whose behalf each Count is asserted, particularly when it appears that most claims have been brought inappropriately by a non-attorney on behalf of others.

(ECF No. 24, PageID.430.)  I therefore recommended that Plaintiff AK be directed to clean up his pleading by allowing him a chance to file another amended complaint, and gave specific instructions on how the existing pleading was deficient and instructed Plaintiff that any amended pleading must clarify what specific right Plaintiff alleges is violated, and on whose behalf the claim is brought. (*Id.*)

I concluded by stating, "The amended pleading must comply with the Federal Rules of Civil Procedure and the case law identified above, and clearly identify what claim is being brought by what party and which alleged right is alleged to have been violated.  If Plaintiff AK—or any other Plaintiff who chooses to properly move forward—fails to abide by this dictate, the amended pleading may be tested by motion or by show cause order."  (ECF No. 24, PageID.435.)

### c.  Judge Behm's Order and the Third Amended Complaint

No party filed objections to the R&R.  On August 22, 2024, Judge Behm entered an opinion and order which adopted the R&R.  Judge Behm ordered that:

> Because Plaintiff Khatri can only represent himself, not his wife, child, or the undefined "estate," the court also agrees that the unrepresented Plaintiffs should be given 30 days to find counsel. The court further agrees that, if no

counsel has filed an appearance on behalf of Plaintiffs [Alma],[5] the Estate, or GK (and in the case of GK, if she has not alternatively filed a notice to proceed *pro se*) by **September 21, 2024**, they will be dismissed from this lawsuit without prejudice, pursuant to Eastern District of Michigan Local Rule 41.2. At that time, any Plaintiffs still in the lawsuit should be given an additional 60 days to file a third amended complaint, which must be filed by **November 20, 2024**. The court directs Plaintiffs to Judge Patti's Report and Recommendation, which provided a thorough outline of the pleading requirements in federal court, as well as resources that may be of assistance, including the Federal *Pro Se* Legal Assistance Clinic. (ECF No. 24, PageID.433).

(ECF No. 25, PageID.439 (emphasis in original).)

Plaintiffs Alma and the Estate did not file a notice of appearance, and Plaintiff GK did not file a notice of appearance or an intent to proceed *pro se*, by the required deadline. Instead, Plaintiffs filed a third amended complaint (the "TAC") on September 20, 2024.  The TAC lists three Plaintiffs: "Azazhusen Khatri, an Executor of the Azazhusen Khatri, Estate individually; Ghazala Khatri, an Executrix of the Ghazala Khatri, Estate individually; and Azazhusen Khatri and Ghazala Khatri, as NEXT FRIEND For Alma Doe, a Minor, individually."  Thus, the TAC now appears to be brought with three plaintiffs: two estates and AK and GK as "next friend" for Alma Doe.

---

[5] Judge Behm's order mistakenly lists the minor Plaintiff's name as "Anne" rather than "Alma."  (ECF No. 25, PageID.439.)  Anne is the plaintiff in the related case brought by Alma's sister, 23-12930)  This is a clear typographical error with no substantive import, and the Court should analyze the matter as though the correct Plaintiff "Alma" were listed.

The TAC first lists the nine counts, all of which are asserted against DPS Defendants, Baydoun, Alcodray, Mashhour, Maleyko, Pletzke.  The first nine counts are apparently brought solely by the minor Plaintiff as they are preceded by a statement indicating "Plaintiff Alma Doe claims:"  (ECF No. 26, PageID.468.)

- Count I: Failure to Comply with U.S. Constitution 14th Amendment, and 42 U.S.C. §§1981, 1983; Title IX, 20 U.S.C. § 1681 et seq.; Civil Rights 18 U.S.C. §§ 242, 245, 1001, 1752; and RICO Laws 18 U.S.C. §§ 1961-68. (ECF No. 26, PageID.468)

- Count II:  Failure to Comply with Title IX, 20 U.S.C. § 1681 *et seq.* (ECF No. 26, PageID.474)

- Count III:  U.S. Department of Education; The Rehabilitation Act of 1973, Section 504, 34 CFR 104 and American with Disabilities Act of 1990 (ADA), Title II, 42 USC 12131-12134, 28 CFR 35; The Persons with Disabilities Civil Rights Act of Michigan MCL 370.1101 *et seq*. (ECF No. 26, PageID.476)

- Count IV: Retaliation and Conspiracy; 14th Amendment 42 U.S.C. § 1985 Violations; and Title IX Retaliation 20 U.S.C. § 1681 *et seq*. Violations; and Civil Rights 18 U.S.C. §§ 241, 245, 371, 372, 1001, 1752 Violations, and RICO Laws 18 U.S.C. §§ 1961-68, Retaliation and Violations. (ECF No. 26, PageID.478)

- Count V:  Deliberate Indifference to Sexual Harassment 20 U.S.C. §1681 *et seq*. (ECF No. 26, PageID.482)

- Count VI:  *Monell* Liability for Failure to Comply with Title IX 42 U.S.C. § 1983. (ECF No. 26, PageID.483)

- Count VII:  Elliot-Larsen Civil Rights Act of 453 of the 1976 and Michigan Revise[d] School Code "The Matt Epling Safe School Law", MCL 380.1310b. (ECF No. 26, PageID.485)

- Count VIII:  Negligence—MCL Act 170 of 1964, 691.1401; and Gross Negligence GTLA (v) and M.C.L. § 600.2945(d).  (ECF No. 26, PageID.486)

- Count IX:  Intentional Infliction of Emotional Distress (ECF No. 26, PageID.487)

The next group of counts are preceded by the statement "Plaintiffs and Its Estates Claims:" and is followed by what appears to be identical counts to those brought by the minor Plaintiff.  (ECF No. 26, PageID.488.)  All counts are asserted against DPS Defendants, Baydoun, Alcodray, Mashhour, Maleyko, Pletzke. While the alleged statutory provisions are identical, the TAC does appear to assert different factual allegations under this section; the counts are tailored to the alleged grievances of the parents GK and AK and presumably their "estates."

- Count X: Failure to Comply with U.S. Constitution 14th Amendment, and 42 U.S.C. §§1981, 1983; Title IX, 20 U.S.C. § 1681 et seq.; Civil Rights 18 U.S.C. §§ 242, 245, 1001, 1752; and RICO Laws 18 U.S.C. §§ 1961-68. (ECF No. 26, PageID.488)

- Count XI:  Failure to Comply with Title IX, 20 U.S.C. § 1681 *et seq.* (ECF No. 26, PageID.493)

- Count XII:  U.S. Department of Education; The Rehabilitation Act of 1973, Section 504, 34 CFR 104 and American with Disabilities Act of 1990 (ADA), Title II, 42 USC 12131-12134, 28 CFR 35; The Persons with Disabilities Civil Rights Act of Michigan MCL 370.1101 *et seq*. (ECF No. 26, PageID.495)

- Count XIII: Retaliation and Conspiracy; 14th Amendment 42 U.S.C. § 1985 Violations; and Title IX Retaliation 20 U.S.C. § 1681 *et seq*. Violations; and Civil Rights 18 U.S.C. §§ 241, 245, 371, 372, 1001, 1752 Violations, and

RICO Laws 18 U.S.C. §§ 1961-68, Retaliation and Violations. (ECF No. 26, PageID.496)

- Count XIV:  Deliberate Indifference to Sexual Harassment 20 U.S.C. §1681 *et seq.* (ECF No. 26, PageID.504)

- Count XV:  *Monell* Liability for Failure to Comply with Title IX 42 U.S.C. § 1983. (ECF No. 26, PageID.505)

- Count XVI:  Elliot-Larsen Civil Rights Act of 453 of the 1976 and Michigan Revise[d] School Code "The Matt Epling Safe School Law", MCL 380.1310b. (ECF No. 26, PageID.506)

- Count XVII:  Negligence—MCL Act 170 of 1964, 691.1401; and Gross Negligence GTLA (v) and M.C.L. § 600.2945(d).  (ECF No. 26, PageID.508)

- Count XVIII:  Intentional Infliction of Emotional Distress (ECF No. 26, PageID.509)

Finally, the TAC concludes with one final count that is brought by "Plaintiffs Alma Doe, Ghazala, Azazhusen, and Its Estate's."

- Count XIX:  Injunctive Relief  (ECF No. 26, PageID.510.)

**B.  Standard**

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true."  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); *see also*

14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations" but must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd. P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013).

## C. Analysis

Defendants bring their motion to dismiss on several grounds. They argue that: (1) the TAC fails to comply with basic rules of procedure; (2) the TAC should be dismissed pursuant to Federal Rule of Civil Procedure 41(b); (3) Plaintiff AK fails to state claims upon which relief can be granted; and, in the alternative, (4) the Court should require Plaintiff AK to file a more definite statement of his pleading against Defendants. Although Defendants present four discrete arguments in their motion, the heart of their motion is distilled in their introduction:

> While Plaintiffs separated Plaintiff Alma's claims from those of the other Plaintiffs, Plaintiffs otherwise fail to comply with this Court's Order dated August 22, 2024. Plaintiffs GK, Alma, and the undefined "estates" (there now seems to be more than one "estate") are not represented by counsel. Plaintiffs ignored this Court's directive and filed the Third Amended Complaint while still represented *pro se* by AK. Plaintiffs also ignore the

15

pleading requirements outlined in Judge Patti's Report and Recommendation.

(ECF No. 27, PageID.569.)  The Court should agree that Plaintiffs' TAC is deficient and fails to comply the Court's previous admonitions, and grant the motion to dismiss.

## 1. Parties in interest

As an initial matter, before getting into the substance of Defendants' argument, there appears to be confusion as to who, precisely, are the Plaintiffs in the TAC.  Defendants seem to believe the TAC is brought by Alma, the undefined "estates," GK, and AK: *i.e.*, five parties.  I disagree. As noted above, the caption of the TAC lists three Plaintiffs: "Azazhusen Khatri, an Executor of the Azazhusen Khatri, Estate individually; Ghazala Khatri, an Executrix of the Ghazala Khatri, Estate individually; and Azazhusen Khatri and Ghazala Khatri, as NEXT FRIEND For Alma Doe, a Minor, individually."  (ECF No. 26, PageID.441.)  Each of these three parties are separated by a semicolon, indicating a list of three parties. Likewise, in the first paragraph of the TAC states, "The 'Plaintiffs' have been revised in accordance with court orders docketed #23 and #24 as follows:" and then provides a list of three parties:

a) AZAZHUSEN KHATRI, an Executor of the AZAZHUSEN KHATRI ESTATE, individually;
b) GHAZALA KHATRI, an Executrix of the GHAZALA KHATRI ESTATE, individually;
c) AZAZHUSEN KHATRI and GHAZALA KHATRI, as NEXT FRIEND

16

for ALMA DOE, a Minor, and the 'ALMA DOE,' Estate.
(ECF No. 26, PageID.441.)  This list matches the parties in the caption, (the AK estate, the GK estate, and AK and GK as next friends to Alma), but then references, inextricably, AK and GK as next friends, purportedly, to the Alma Doe Estate.  Since AK, GK, and Alma are all apparently live people, it is anyone's guess why their "estates" would be bringing these claims.

The TAC is signed personally by AK as Executor of the Azazhusen Khatri Estate, GK as Executrix of the Ghazala Khatri Estate, and both AK and GK, with signature lines indicating "Agent/Attorney-in-fact as per Power of Attorney." Presumably, these two signatures are on behalf of Alma, although they do not specifically so state. (ECF No. 26, PageID.513.)

The TAC itself does not provide much clarity. As with the prior pleading, the seventy-three page document weaves in and out of a lengthy narrative, seemingly exchanging pronouns without reason, sometimes indicating Plaintiff (singular) sometimes indicating Plaintiffs (plural), sometimes referring to "Plaintiff's" (possessive? Or a typographical error of plural Plaintiffs?) as "Khatri parents" (ECF No. 26, PageID.471), or referring to "Plaintiff's parents." (*Id.*) Counts X- XVIII are purportedly brought by "Plaintiffs and Its Estates" but who are the unspecified "Plaintiffs?" And whose "estates" are being referenced (and why are they being referenced at all)?  The Court has no idea.  Immediately

17

following Count X, the TAC states, "Plaintiffs Ghazlala and Azazhusen are United States citizens . . . "  (ECF No. 26, PageID.488, ¶ 156.)  But who are the plaintiffs: GK and AK (the citizens) or their "estates"?  And if the plaintiffs are the "estates," why does the pleading list the citizenship of AK and GK?  The Court cannot discern.

It is murky, at best, as to whether AK and GK are present in this lawsuit as plaintiffs, personally, or solely as executors of the "estates."  Given the phrasing in the caption, and the list of plaintiffs in the first paragraph of the complaint, the Court should find that the TAC does *not* include AK and GK as personal parties, but only as executors of their "estates."  This finding is further supported by how AK and GK signed the complaint, with signature lines for executor or as power of attorney, but not with signature lines for themselves personally.  Additionally, in the response to the motion to dismiss, Plaintiffs state that they have "submitted a copy of the estate registration . . . [which] affirm that the Estates are not only duly registered but also exist as legally recognized entities under Michigan law, with their Executors and Executrix officially documented."  (ECF No. 30, PageID.588.)  Thus, the Court should conclude that the TAC is brought by three plaintiffs: two "estates," and AK and GK as "next friend" for Alma Doe.

With respect to whether GK complied with the Court's previous instruction to either retain counsel or to affirm that she is proceeding *in pro per,* Plaintiffs

state in their response brief, "Plaintiff Ghazala Khatri, *in her capacity as Executrix of the Ghazala Khatri Estate,* has fully and respectfully complied with the Court's directives as outlined in Orders [ECF Nos. 24 and 25]."  (ECF No. 30, PageID.589 (emphasis added).)  But saying so does not make it so.  As explained in this report, they have not.

## 2.  Federal Rule of Civil Procedure 41(b)

With the proper parties identified, the Court can make quick work of Defendants' motion to dismiss.

"In all courts of the United States the parties may plead and conduct their own cases personally or by counsel." 28 U.S.C. § 1654.  In my prior R&R, adopted by the Court, Plaintiffs were clearly and decidedly informed that parents cannot represent their minor children *pro se*, and that any "estates" similarly cannot proceed *pro se*.  (ECF No. 24, PageID.426.)  I explained:

> So, while parents may sue or defend in their own name on behalf of their minor child, or on behalf of an estate, they may not do so *pro se* but must engage the services of an attorney. *Cavanaugh ex rel. Cavanaugh v. Cardinal Loc. Sch. Dist.*, 409 F.3d 753, 755 (6th Cir. 2005), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007). "Because, by definition, *pro se* means to appear on one's own behalf, a person may not appear *pro se* on another person's behalf in the other's cause of action." *Id.*

(ECF No. 24, PageID.426.)  I further admonished, "while AK may represent himself, he cannot represent his wife, child, or the undefined 'estate.'  (ECF No. 24, PageID.427.)  I recommended that **"[g]iven the relative infancy of this case,**

19

**rather than dismiss the unrepresented Plaintiffs, the Court should give them 30 days to find counsel.  If, after 30 days, no counsel has filed an appearance on behalf of Plaintiffs Alma, the Estate, or GK (and in the case of GK, if she has not alternatively filed a notice to proceed *pro se*), then they should be dismissed from this lawsuit without prejudice for lack of prosecution under Eastern District of Michigan Local Rule 41.2."**  (ECF No. 24, PageID.429 (emphasis added).)

Judge Behm accepted this recommendation and ordered that Plaintiffs Alma, the Estate, and GK were required to submit, by September 21, 2024, a notice of appearance by counsel or, in the case of GK, a notice of indication that she would proceed *pro se*.  No such notice was filed.  Instead, Plaintiffs filed the TAC, which similarly does not abide by the Court's instruction that parents cannot represent their minor children *pro se*, and that estates cannot proceed *pro* se.

The TAC is signed by GK and AK on behalf of the estates, but the Court has already held that as non-lawyers, Plaintiffs could not represent the "estates" *pro se*. This is especially true given that the Court is still unclear as to the nature of the "estates," what their legal standing is in this matter, who are the beneficiaries of the estate, or any other pertinent details the Court would need were this case to proceed.  Plaintiffs purport to attach certificates of registration to their TAC (ECF No. 26, PageID.517-520), but the documents are wholly illegible and do not

provide further elucidation on the matter.  To the extent anything is clear from these documents, it is the words "Certified <u>Business</u> Registration," (emphasis added) at the top, indicative that these are not probated estates of deceased individuals.  It is dubious that any such "estates," rather than the parents, would have standing to bring the types of claims that appear to be brought in this case. Because the TAC is subject to dismissal for multiple reasons, the Court will not expend additional resources attempting to decipher or define Plaintiffs' elusive "estates," particularly in the absence of any understandable theory or connection of the estates' standing or the propriety of their presence in this action.  Suffice to say, the Court is not persuaded that the filing of purported registrations—which are a far cry from any record of which the Court could take judicial notice under FRE 201—should impact the Court's ruling that the "estates" could not represent themselves *pro se*.

Further, Plaintiffs have been informed that non-lawyer parents cannot represent their minor child.  Plaintiffs' suggestion that they may represent Alma, or her "estate," because of a power of attorney is wrong.  In this, they seem to conflate an *attorney in fact* (an agency status designating one to "transact business for another" that arises from a power of attorney) with an *attorney at law* (*i.e.*, "someone who practices law; lawyer").  *See* "Attorney" and "Power of Attorney," *Black's Law Dictionary* (10th ed.) at 153, 1360.  "A non-lawyer may not represent

another non-lawyer in connection with a matter pending in federal court. *This is so even if such representation is purportedly authorized by a power of attorney or other agreement*." *Brown v. Bobbett*, No. 20-1278-JDT-CGC, 2021 WL 982335, at *1 (W.D. Tenn. Mar. 16, 2021) (emphasis added) (citing *Ohio Nat'l Life Assurance Corp. v. Langkau*, No. 2007 WL 1951500, *1 (M.D. Fla. July 2, 2007) (non-lawyer may not represent an otherwise *pro se* litigant, even through a power of attorney); *DePonceau v. Pataki*, 315 F. Supp. 2d 338, 341 (W.D.N.Y. 2004) (power of attorney may not be used to evade prohibition against unauthorized practice of law); *Lutz v. Lavelle*, 809 F. Supp. 323, 325 (M.D. Pa. 1991) (party may not contract with a non-lawyer to represent him in legal proceedings in federal court); *see also Kapp v. Booker*, No. 05-402-JMH, 2006 WL 385306, at *3 (E.D. Ky. Feb. 16, 2006) (power of attorney gives wife legal standing to assert her husband's claims on his behalf, but "does not authorize her to practice law by representing [him] in a lawsuit: that must still be done by a licensed attorney.")). Moreover, a minor child lacks capacity to give "power of attorney" to anyone.

In sum, Plaintiffs were specifically informed that, while they could represent themselves *pro se*, they could not represent any estates or their minor child *pro se*. GK and AK responded by filing the TAC which lists only estates and the minor child as plaintiffs, and purporting to represent those estates and the minor child *pro se*. Ironically, the only people they could legitimately represent in this Court,

namely, themselves (and only themselves) as individuals, are conspicuously absent as named parties; instead, they purport to be representing two estates and a minor child.  This tactic is a direct and willful violation of the Court's order, and the TAC should therefore be dismissed, as warned, under Federal Rule of Civil Procedure 41(b).

Rule 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  Fed. R. Civ. P. 41(b).  As the Sixth Circuit has explained:

> In the context of dismissal pursuant to Rule 41(b) for failure to prosecute, we look to four factors for guidance: (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999) (citing *Stough v. Mayville Community Sch.*, 138 F.3d 612, 615 (6th Cir.1998)).  Applying these factors to the case at bar, the Court should find that dismissal is warranted.

1. Plaintiffs' repeated and perplexing failure to abide by the Court's clear directions is the result of willfulness, bad faith or fault.  There is no other explanation for Plaintiffs' continued attempts to impermissibly represent third parties *pro se*.  The Court has explained that AK and GK cannot represent the minor child or the estates *pro se*, but Plaintiffs apparently think they know better than the Court.

2. Defendants are prejudiced by having to continuously defend against a pleading that does not comply with the Federal Rules or with this Court's orders, therefore wasting time and attorney fees by filing repeated motions to dismiss.

3. Both the Undersigned and Judge Behm warned Plaintiffs that a failure to retain counsel for the minor child and estates would result in a dismissal. **(ECF No. 24, PageID.429; ECF No. 25, PageID.439.)**

4. As for whether less drastic sanctions were imposed or considered, it appears that any such effort would be fruitless, taking into consideration that both the Undersigned and Judge Behm have explained to Plaintiffs what steps they need to have taken, and that Plaintiffs have disregarded or ignored those instructions.

Each of the factors weighs against Plaintiff; therefore, the Court should **DISMISS WITHOUT PREJUDICE** Alma and the "estates" under Fed. R. Civ. P. 41(b) and E.D. Mich. LR 42.1. Defendants argue that given Plaintiffs' contumacious behavior, a dismissal with prejudice is warranted. While I certainly understand (and share) Defendants' frustration with Plaintiffs' continued refusal to abide by the Court rules and the Court's orders, I recommend the dismissal be without prejudice for two reasons. First, although it is clear AK, and to a lesser extent GK, is steering the ship in this case, technically the only parties to the TAC

are the estates and the minor child. As I explained in my prior R&R, "[i]n cases where a layperson improperly attempts to represent another party *pro se*, 'the usual course of action is to dismiss the case *without prejudice*.'"   *Zanecki v. Health All. Plan of Detroit*, 576 F. App'x 594, 595 (6th Cir. 2014) (emphasis added) (citations omitted).  Here, the unrepresented parties, particularly the minor child, should not be prejudiced for her parents' willful attempt to represent her without a law degree. Second, the Court's prior warning was that if Plaintiffs did not retain an attorney, the estates and minor child would be dismissed "without prejudice."  As such, I recommend that the estates and the minor be dismissed without prejudice to their right to proceed *through licensed* counsel, in a new case.  The Court should make no finding as to whether any such case is advisable or timely.

Should AK and GK file *again* on purported behalf of the minor or the "estates" in abrogation of this Court's repeated directives, they would likely be at risk of a hefty monetary sanction to compensate for costs and expenses incurred by Defendants in having to repeatedly defend themselves.

### 3.  Federal Rule of Civil Procedure 8

Defendants also move for dismissal under Rule 8, arguing that the TAC fails to comply with basic rules of procedure.  (ECF No. 27, PageID.572.)  The Court should agree.

In my previous R&R, I set forth, exhaustively, the requirements of Federal Rules of Civil Procedure 8, 10, and 11, particularly the requirements in Rule 8 to contain a "*short and plain statement* of the grounds for the court's jurisdiction," and a "*short and plain statement* of the claim showing the pleader is entitled to relief." (ECF No. 24, PageID.431-2 (emphases added).)  There is nothing short nor plain about the TAC. The Sixth Circuit has explained the requirements of Rule 8:

> What is a short and plain statement of a claim or a simple, clear, and direct allegation will, of course, depend on the totality of the circumstances: more complicated cases will generally require more pleading. What Rule 8 proscribes is *obfuscation* of the plaintiff's claims. *See* [*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).]. The district court and defendants should not have to "fish a gold coin from a bucket of mud" to identify the allegations really at issue. [*United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)].

*Kensu v. Corizon, Inc.*, 5 F.4th 646, 651 (6th Cir. 2021).  In this case, Plaintiffs have obfuscated any potentially viable claims in the muddled mess of the TAC.

I instructed Plaintiffs in my R&R that in amending their pleading, Plaintiffs:

> . . . must avoid lumping together multiple statutes, claims and theories in each count, as it is extraordinarily difficult to discern what the claims are under any given count in the existent pleading, and pleading in this manner again risks dismissal for failure to state a claim. Throwing "everything but the kitchen sink" into a complaint does not enhance it; rather, it tends to have the opposite effect.

(ECF No. 24, PageID.431.)  As with the instruction regarding *pro se* representation, Plaintiffs failed to heed my direction.  Plaintiffs' verbose,

meandering, often nonsensical third amended complaint weaves together dozens of statutes, hundreds of allegations into a seventy-three page pleading.  Plaintiffs don't throw everything *but* the kitchen sink into their pleading; Plaintiffs throw everything *including* the kitchen sink.  It is true that "excessive length  . . . cannot be the sole factor justifying dismissal." *Kensu*, 5 F.4th at 649 (citing *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) and *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1132–33 (9th Cir. 2008) (finding it an abuse of discretion to dismiss with prejudice a "long but intelligible" complaint that "allege[d] viable, coherent claims"). But Rule 8 is not followed where, as here, "the complaint is so 'verbose, confused and redundant that its true substance, if any, is well disguised.'" *Id.* (quoting *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969) (citation omitted)).

Although Plaintiffs made an effort to delineate which claims were brought by which Plaintiffs, as noted above, any further effort to heed the Court's instructions stop there.  As before, Plaintiffs lump together multiple statutes, claims and theories in each count, and as before, the pleading often flips back and forth between referencing the singular "Plaintiff" and the plural "Plaintiffs," or between the "parents" or the "estates," or any other purported party.  Indeed, it appears to the Court that the heart of the problem is that Plaintiffs believe the rights and claims of GK, AK, Alma, and the estates are all interchangeable and

synonymous. Adding to the complication is Plaintiffs' attempt to include seemingly a multitude of related and unrelated statutes and theories of relief in multiple counts.  The result is nothing short of chaos.

As I stated in my prior R&R (ECF No. 24, PageID.432-33), the Court can only go so far in the exercise of liberally construing Plaintiffs' *pro se* pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Even in pleadings drafted by *pro se* parties, '"courts should not have to guess at nature of the claim asserted."' *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).  Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him . . . . [N]either may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).  Furthermore, the Court has "no obligation to act as counsel or paralegal to pro se litigants."  *Pliler v. Ford*, 542 U.S. 225, 231 (2004). In the end, Plaintiff is "the master of his complaint," and thus, the Court looks to the pleadings to define his claims.  *Roddy v. Grand Trunk W. R.R., Inc.*, 395 F.3d 318, 322 (6th Cir. 2005).

Accordingly, even if the Court disagrees with my recommendation to dismiss the TAC under Rule 41, the Court should nonetheless dismiss the case for a failure, after multiple attempts, to meet the requirements of the Federal Rules of

Civil Procedure.  Moreover, if the Court disagrees with my conclusion that the only current plaintiffs in the action are two estates and the minor plaintiff, and if the Court instead interprets the TAC to be brought *pro se* by GK and AK, the Court should dismiss their claims under Rule 8.  If the Court dismisses any claims by AK and GK under Rule 8, the dismissal should be **WITH PREJUDICE**.  *See Kensu*, 5 F.4th at 653 ("[A] district court need not have infinite patience. Persistent or vexatious refusal to follow the rules may warrant dismissal with prejudice."). Where, as here, "a district court has offered multiple opportunities to fix the complaint and the plaintiff has persisted in noncompliance, then the harsh sanction of dismissal is appropriate;" the same is true where the plaintiffs' amended pleading "indicates a basic inability or unwillingness to comply with the district court's orders." *Id.*

While the Court should not dismiss any claims by the minor Plaintiff with prejudice, as her rights have been pressed ineffectually and impermissibly by her parents, given AK's and GK's consistent failure to abide by the Court's instructions and the Court rules, to the extent the Court finds that any claims are currently brought by AK and GK *personally*, those claims should be dismissed with prejudice.

### III. CONCLUSION

Accordingly, for the reasons stated above the Court should **GRANT** Defendants' motion to dismiss Plaintiffs' third amended complaint. (ECF No. 27.)

### IV. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

**IT IS SO ORDERED.**

Dated:  July 31, 2025

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE